|   |   |
|---|---|
| BRANDI R. BANKSTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICREDIT FINANCIAL SERVICES, INC., and DOES 1-10, inclusive,<br><br>Defendants. | Case No: C 09-04892 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. 29 |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

Plaintiff Brandi R. Bankston ("Plaintiff") brings the instant putative class action against Defendant AmeriCredit Financial Services, Inc. ("AmeriCredit") under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. The crux of her claim is that, in violation of the Rees-Levering Automobile Sales Finance Act ("Rees-Levering Act" or "the Act"), Cal. Civ. Code §§ 2981-2984.6, AmeriCredit failed to send her and other consumers proper notice of their legal rights and obligations following the repossession of their vehicles, and has improperly collected or attempted to collect deficiencies (i.e., the amount owing on the vehicle less the sales proceeds) following the sale of their vehicles. The Court has jurisdiction order this removed action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Dkt. 29. The parties are presently before the Court on Defendant's Motion for Summary Judgment Re: Standing. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); Civ. L.R. 7-1(b).

I. **BACKGROUND**

   A. **OVERVIEW OF THE REES-LEVERING ACT**

The Rees-Levering Act regulates "conditional sale contracts" for the purchase of motor vehicles in California. The statute applies to installment contracts in which the buyer takes possession of the vehicle and either (a) "title vests in the buyer thereafter only upon the payment of all or a part of the price" or (b) a lien on the property vests in the seller as security for payment of all or part of the price. Cal. Civ. Code § 2981(a)(1). Under the Act, defaulting buyers whose vehicles have been repossessed by or surrendered to a creditor must be afforded the opportunity to "redeem" their vehicles by paying the full balance due under the contract. Id. § 2983.2(a)(1). Buyers also have a "conditional right to reinstate the contract" by curing the default and paying any applicable delinquency charges. Id. §§ 2983.2(a)(2), 2983.3(a), (d). To ensure that defaulting buyers are made aware of these rights prior to the disposal of their vehicles, the Act requires that creditors provide a written notice of intent to dispose of a repossessed or surrendered motor ("NOI"). Id. § 2983.2(a). Compliance with the notice requirements is a prerequisite to the creditor's ability to collect any deficiency from the defaulting buyer. Id.

   B. **FACTS PERTAINING TO PLAINTIFF**

On May 3, 2006, Plaintiff executed a Retail Installment Sales Contract ("Agreement") for the purchase of a 2002 Volkswagen Passat for a total cash price of $16,956.81. Hecker Decl. Ex. C at 18:13-23, 21:20-22:9 (Bankston Deposition), Dkt. 32. Under the terms of the Agreement, Plaintiff made a $1,300 down payment and financed the remainder of the purchase price through 60 monthly installments in the amount of $440.65. Paterson Decl. Ex. A, Dkt. 31. With financing, the total cost of the vehicle came to $27,739. Id.

Plaintiff failed to make pay her monthly payments for August and September 2006. Dishman Ex. A, Dkt. 30. As a result, on October 10, 2006, AmeriCredit sent Plaintiff a form Notice of Default and Intent to Repossess Property and Your Right to Cure ("Notice of Default"). Id. In response, Plaintiff requested and AmeriCredit agreed to a payment

1  plan which allowed Plaintiff to keep her car.  Hecker Decl. Ex. C at 32:9-24, 33:14-34:11.
2  Thereafter, between May 2007 and June 2008, AmeriCredit sent Plaintiff five additional
3  Notices of Default due to her numerous failures to timely make her monthly car payments.
4  Dishman Decl. Exs. B-F.  In each instance, Plaintiff made arrangements with AmeriCredit
5  to pay the delinquencies and was able to keep her car.  Hecker Decl. Ex. C at 34:16-35:1,
6  35:22-36:7, 36:9-37:10, 37:13-39:17, 40:8-41:8.
7       Plaintiff was sent her seventh and final Notice of Default on about February 13,
8  2009, based on her failure pay her installments for January and February 2009.  Dishman
9  Decl. Ex. F.  This time, however, Plaintiff informed AmeriCredit that she wanted to
10 voluntarily surrender her car because it was "inoperable" and would be "too costly" for her
11 to continue to maintain possession, as she could not afford the monthly payments.  Hecker
12 Decl. Ex. C at 43:6-24, 44:3-6.  Plaintiff knew that by surrendering the car, the repossession
13 would appear on her credit report.  Id.
14      On or about May 9, 2009, AmeriCredit repossessed Plaintiff's vehicle.  Dishman
15 Decl. ¶ 9.  On May 12, 2009, AmeriCredit sent Plaintiff a NOI, which disclosed its
16 intention to sell her car and warned that she would be liable for any deficiency.  The NOI
17 stated:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe.  The amount you owe is described in the notice of our right to redeem and conditional right to reinstate provided with this Notice of Our Plan to Sell Property.  *If we get less than you owe, you will owe us the difference*.  If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

22 Id. Ex. H (emphasis added).  The NOI also included information, inter alia, on how Plaintiff
23 could redeem her car or reinstate the Agreement.  Id. Ex. H.  AmeriCredit enclosed a blank
24 form that Plaintiff could utilize to request an extension of the redemption or reinstatement
25 period.  Id.  On June 23, 2009, AmeriCredit sent Plaintiff a Deficiency Calculation which
26 informed her that her car had been sold for $2,100, and that she owed a deficiency balance
27 of $15,142.37.  Paterson Decl. Ex. B.
28

At her deposition, Plaintiff acknowledged receiving the NOI and testified that she found nothing unclear about the explanation of her redemption or reinstatement rights. Hecker Decl. Ex. C at 44:11-15, 45:22-26.1.  However, by the time she had received the NOI, Plaintiff had already surrendered her vehicle and had no intention of seeking reinstatement or redemption because the car was not operational and because she had no ability pay off the loan balance.  Id. at 44:11-24.  Plaintiff also admitted that she understood that she would be responsible for any deficiency balance in the event her vehicle was sold for less than the outstanding balance on her loan, but that she had no intention of paying any deficiency.  Id. at 46:3-21.

On August 28, 2009, AmeriCredit sent Plaintiff a proposal to settle her deficiency obligation if she paid $7,645.86 within 20 days.  Paterson Decl. Ex. C.  After receiving this proposal, Plaintiff contacted AmeriCredit for unspecified "clarification," though she admittedly did not propose or discuss any type of payment plan.  Hecker Decl. Ex. C at 59:6-25.  At some point thereafter, Plaintiff searched the internet for legal representation and eventually spoke to attorney Andrew Oglivie of Anderson, Oglivie & Brewer LLP.  Id. at 54:5-56:11.  On September 16, 2009, after speaking with Mr. Oglivie, Plaintiff unilaterally sent AmeriCredit a check in the amount of $25, allegedly as a payment on her deficiency balance.  Id. at 60:12-20.  According to Plaintiff, she did not discuss making a payment on the deficiency with AmeriCredit and no one told her to send that amount, even though knew that $25 would not satisfy AmeriCredit's settlement offer.  Id. at 50:24-51:5, 60:1-3.  Rather, Plaintiff sent that amount to AmeriCredit, claiming that was all she had available to pay.  Id. at 60:4-6.

### C. PROCEDURAL HISTORY

On October 2, 2009, little more than two weeks after sending her $25 check to AmeriCredit, Plaintiff, represented by Anderson, Oglivie & Brewer LLP, filed the instant

lawsuit against AmeriCredit.[1]  The First Amended Complaint ("FAC") alleges claims for (1) violation of the UCL, and (2) declaratory relief.  Dkt. 1-1.  Plaintiff purports to bring this action on behalf of a class "composed of all persons who were sent a NOI by AmeriCredit … following the repossession or voluntary surrender of a motor vehicle, who were assessed a deficiency balance following the disposition of the vehicle, and against whom AmeriCredit has asserted, collected, or attempted to collect any portion of the deficiency balance…."  FAC ¶ 36.  The gravamen of Plaintiff's claims is that the NOI received by Plaintiff and putative class members from AmeriCredit does not comport with the Rees-Levering Act.  Plaintiff seeks restitution, injunctive relief and declaratory relief.[2]

Presently before the Court is AmeriCredit's motion for summary judgment.  Dkt. 29.  In its motion, AmeriCredit contends that Plaintiff lacks standing to bring a claim under the UCL because she cannot show that she suffered any injury in fact and lost any money or property "as a result" of AmeriCredit's conduct, which are prerequisites to bringing a UCL claim.  See Cal. Bus. & Prof. Code § 17204.  AmeriCredit contends that it is uncontroverted that after Plaintiff voluntarily surrendered her car, she had no intention of redeeming it or seeking reinstatement of her loan, never intended to pay the deficiency balance and never intended to satisfy AmeriCredit's offer to settle her deficiency balance.  As for Plaintiff's post-surrender payment of $25, AmeriCredit argues that she made that payment solely for the purpose of claiming that she suffered a monetary "loss" for purposes

---

[1] Plaintiff filed her FAC in state court on October 7, 2009.  AmeriCredit answered the FAC and removed the action under the under Class Action Fairness Act, 28 U.S.C. § 1332(d).

[2] This case is related to Cardenas v. AmeriCredit Fin. Servs., Inc., No. C 09-4978 SBA (N.D. Cal.), another class action pending before this Court which was filed by Anderson, Oglivie & Brewer LLP, the same law firm representing Plaintiff in the instant action.  It is not entirely clear why Plaintiff's counsel filed two lawsuits against the same defendant under the UCL, based on what appears to be essentially the same conduct.  However, counsel may have done so for tactical reasons, since the sales agreement at issue in Cardenas includes an arbitration clause, while the Agreement signed by Plaintiff in this case does not.  In addition, unlike the present action, the plaintiffs in Cardenas are seeking injunctive relief only, apparently in an attempt to avoid the arbitration clause.  See Cardenas v. AmeriCredit Fin. Servs., Inc., No. C 09-4978 SBA, 2010 WL 3619851, at *8 (N.D. Cal. filed Sept. 13, 2009) (denying AmeriCredit's motion to compel arbitration on the ground that claims for injunctive relief under the UCL are not arbitrable).

of standing. In response, Plaintiff avers that she was harmed by AmeriCredit's efforts to collect on the deficiency by having paid $25 allegedly in response to AmeriCredit's demands and as a result of AmeriCredit having reported a "charge-off" of the deficiency to credit agencies. The matter is fully briefed and is now ripe for adjudication.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). An issue of fact is "material" if, under the substantive law of the case, resolution of the factual dispute might affect the outcome of the claim. See Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Moreover, self-serving declarations, uncorroborated by other testimony or other persuasive evidence, cannot create a genuine issue of fact sufficient to defeat summary judgment. Villiarimo v. Aloha Island Air, Inc.,

281 F.3d 1054, 1061 (9th Cir. 2002). Only admissible evidence may be considered in ruling on a motion for motion for summary judgment. Fed.R.Civ.P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

### III. DISCUSSION

#### A. PRUDENTIAL STANDING UNDER THE UCL

The party seeking relief in a federal court action "bears the burden of showing that he has standing for each type of relief sought." Summers v. Earth Island Inst., --- U.S. ---, 129 S.Ct. 1142, 1149 (2009). The doctrine of standing has both constitutional and prudential (i.e., non-constitutional) components. See Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n, 457 F.3d 941, 950 (9th Cir. 2006). Constitutional standing pertains to Article III's case or controversy requirement. Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Prudential standing considers whether "a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit." City of Sausalito v. O'Neill, 386 F.3d 1186, 1199 (9th Cir. 2004). The issue now before the Court pertains to Plaintiff's prudential standing under the UCL.

The UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...." Cal. Bus. & Prof.Code § 17200. "Historically, the UCL authorized any person acting for the interests of the general public to sue for relief notwithstanding any lack of injury or damages." Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1359 (2010); see also Californians for Disability Rights v. Mervyn's, LLC, 39 Cal.4th 223, 227 (2006). In 2004, however, California voters passed Proposition 64, which significantly limited private standing under the UCL. In re Tobacco II Cases, 46 Cal.4th 298, 316 (2009). "After Proposition 64, ... a private person has standing to sue only if he or she 'has suffered [an] injury in fact and has lost money or property as a result of such unfair competition.'" Californians for Disability Rights, 39 Cal.4th at 227 (quoting Cal. Bus. & Prof.Code § 17204). "The specific abuse of the UCL at which Proposition 64 was directed was its use by unscrupulous lawyers who

exploited the generous standing requirement of the UCL to file "shakedown" suits to extort money from small businesses." In re Tobacco II Cases, 46 Cal.4th at 316. The "intent of California voters [in passing Proposition 64] was to limit such abuses by 'prohibiting private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact.'" Id. at 316-17 (citations omitted).

In the class action context, standing under the UCL must be established as to the class representative. In re Tobacco II Cases, 46 Cal.4th at 306. Thus, the class representative plaintiff must demonstrate that he or she "suffered injury in fact *and* has lost money or property *as a result of* the unfair competition." Cal. Bus. & Prof. Code, § 17204 (emphasis added). A plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition (2) lost money or property or (3) been denied money to which he or she has a cognizable claim. Hall v. Time Inc., 158 Cal.App.4th 847, 854-55 (2008). The "injury in fact" and "lost money or property" requirements of § 17204 may overlap. See Troyk v. Farmers Group, Inc., 171 Cal.App.4th 1305, 1348 (2009). The "as a result of" language of § 17204 imposes a causation requirement. See Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010) ("[the UCL] requires a 'causal connection' between [the defendant]'s alleged UCL violation and her injury in fact"); Troyk, 171 Cal.App.4th at 1348 ("the phrase 'as a result of' connotes an element of *causation* (i.e., [plaintiff] lost money because of [defendant]'s unfair competition").

### B.  PLAINTIFF'S STANDING UNDER THE UCL

Plaintiff predicates her FAC on each of the three prongs of the UCL, though her "principal claim is under the UCL's unlawful prong, not the deceptive or unfair prongs." Pl.'s Opp'n at 6, Dkt. 34. With respect to the injury-in-fact requirement, Plaintiff argues that she suffered an injury in two ways: (1) "[h]er payment of money, as wrongfully demanded by AmeriCredit"; and (2) "AmeriCredit has reported the charge-off to the credit reporting agencies[.]" Id. at 8, 3. As will be set forth below, neither is sufficient to satisfy Plaintiff's burden of demonstrating standing.

### 1. Payment to AmeriCredit

Plaintiff contends that she sent AmeriCredit a check in the amount of $25 as a result of AmeriCredit's demand for payment of the deficiency. Bankston Decl. ¶¶ 7-8, Dkt. 36. Plaintiff's contention is belied by the record. At her deposition, Plaintiff testified under oath that after receiving her seventh default notice, she decided to voluntarily surrender her car because it was no longer running and "at that point" it was "too costly for [her] to continue to have it [her] possession[.]" Hecker Decl. Ex. C at 43:10-14, 44:3-6. She also acknowledged that she had read and understood the NOI and knew that she would be liable for any deficiency in the event the car sold for less than what she owed, but she nevertheless had no intention of paying off the loan balance to redeem the vehicle or to seek reinstatement of the Agreement. Id. at 44:11-24, 45:22-26.1. Thus, it is clear that Plaintiff cannot show that she suffered any harm attributable to AmeriCredit's actions.

Plaintiff nevertheless claims that during her call with AmeriCredit during which she sought "clarification" of its settlement proposal, she had "already decided" to send AmeriCredit the sum of $25 as payment on the deficiency. Id. at 59:16-18. Yet, Plaintiff concedes that she never disclosed that alleged intention to AmeriCredit nor did she discuss the possibility of entering into a payment plan to pay off her deficiency. Id. at 59:6-10, 60:9-11. Plaintiff also admitted that she had no intention of satisfying her debt to AmeriCredit and knew when she sent the $25 check that it would not satisfy the terms of AmeriCredit's settlement offer. Hecker Decl. Ex. C at 45:3-21, 50:24-51:5, 60:1-3. Indeed, Plaintiff sent her $25 check only *after* her consultation with Plaintiff's counsel— and only two weeks before filing this lawsuit. Id. at 60:12-20.

Based on the undisputed evidence presented, no reasonable trier of fact could conclude that that Plaintiff's payment of $25 was "as a result of" any alleged unlawful conduct by AmeriCredit.[3] To the contrary, it is readily apparent from the record that

---

[3] Since this case was scheduled for a bench trial, Dkt. 28, the Court would serve as the trier of fact. See Hodge v. Superior Court, 145 Cal.App.4th 278, 284-285 (2006) (no right to a jury trial on UCL claims).

Plaintiff sent AmeriCredit a check solely for the purpose of manufacturing standing. Plaintiff's self-serving and uncorroborated assertion that she sent such payment in response to AmeriCredit's requests for payment of the deficiency balance, Bankston Decl. ¶ 8, is belied by the record and is insufficient to avoid summary judgment. See Villiarimo, 281 F.3d at 1061 ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.").

Finally, the Court finds no merit to Plaintiff's contention that Fireside Bank v. Super. Ct., 40 Cal.4th 1069 (2007) compels the conclusion that her token payment of $25 is sufficient to confer standing. Pl.'s Opp'n at 1, 2, 9. Fireside Bank did not address the question of whether the plaintiff satisfied the UCL's standing requirements set forth in § 17204. Rather, in the course of discussing the propriety of the trial court's ruling on class certification, the court noted that the plaintiff had standing to represent the class in that "[s]he, like other members of the putative class, was subjected to the same alleged wrong…." Id. at 1090. Although the court discussed standing in the context of class certification, it did not specifically address whether plaintiff had standing under the UCL. In addition, unlike the plaintiff in Fireside Bank, Plaintiff herein voluntarily surrendered her vehicle and acknowledged that she had no intention of redeeming her vehicle, seeking reinstatement, paying the deficiency or accepting the finance company's offer to compromise the amount of the deficiency. Fireside Bank therefore is inapt and otherwise distinguishable from the present case.

### 2. Reports to Credit Bureaus

Equally misplaced is Plaintiff's reliance on the credit agency reports as a basis for her claim of injury. As an initial matter, this claim of injury is unpled, and thus, is not properly before the Court. Although the FAC expressly alleges that Plaintiff suffered a monetary loss by allegedly having "paid some of AmeriCredit's deficiency claim," FAC ¶ 20, there is no allegation that Plaintiff was injured by virtue of the information reported to the credit bureaus. Indeed, Plaintiff was not aware of this alleged injury until March 2010, when she received a copy of her credit report. Bankston Decl. ¶ 10. It is well settled that a

party cannot avoid summary judgment by alleging facts in an opposition that were not alleged in the pleadings. See Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing to allow the plaintiff to assert new specific factual allegations in support of a claim when they were "presented for the first time in [the plaintiff's] opposition to summary judgment"); Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (quotation marks omitted).

Even if Plaintiff had actually pled that she was injured as a result of AmeriCredit having reported the charge-off to the credit bureaus, she has presented no admissible evidence to support that contention. Under the best evidence rule, proof of what the credit report stated must be established by the report itself. See Fed.R.Evid. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required,…."); Fed.R.Evid. 1004 (setting forth requirements for considering "other evidence" otherwise subject to Rule 1002). However, Plaintiff neither attached an original or a copy of the report, nor has she explained her failure to do so. Plaintiff merely purports to summarize the report by claiming that it "confirmed" that AmeriCredit had reported a charge-off in the amount of $15,117.00. Bankston Decl. ¶ 10.[4] Plaintiff's conclusory and vague assertion that AmeriCredit reported her delinquency as a charge-off is inadmissible hearsay that cannot be considered in connection with a summary judgment motion. See Orr, 285 F.3d at 773-74, 778 (holding that unauthenticated documents and hearsay evidence are inadmissible, and consequently, may not be considered on summary judgment); Harkins Amusement Enters., Inc. v. General Cinema Corp., 850 F.2d 477, 490 (9th Cir. 1988) (same). That flaw notwithstanding, Plaintiff has failed to proffer any evidence that she suffered any actual loss of money or property as a result of AmeriCredit's alleged report to the credit bureaus. See Birdsong v. Apple, Inc., 590 F.3d 955, 961 (9th

---

[4] For the reasons discussed, AmeriCredit's hearsay and best evidence objections to and request to strike paragraph 10 of Plaintiff's declaration are SUSTAINED and GRANTED, respectively. See Dkt. 47.

Cir. 2009) (holding that a hypothetical injury is insufficient to establish standing under the UCL).[5]

## IV. CONCLUSION

The Court finds that, as a matter of law, Plaintiff has failed to demonstrate that she has standing within the meaning of § 17204 to pursue claims under the UCL.  Accordingly,

IT IS HEREBY ORDERED THAT AmeriCredit's motion for summary judgment is GRANTED.  Judgment in this action shall be entered in favor of AmeriCredit.  The Clerk shall close the file and terminate any and all pending matters in the docket.

IT IS SO ORDERED.

Dated: January 4, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[5] Though neither party raises the issue, the Court notes that it is questionable whether harm caused by erroneously reporting to a credit bureau is cognizable under the UCL. See Roybal v. Equifax, 405 F. Supp.2d 1177, 1181 (E.D. Cal. 2005) (granting the defendant's motion to dismiss because plaintiff's UCL claim of injury arising from the reporting of credit information was preempted by the FCRA); accord Janti v. Encore Capital Group, Inc., No. 09CV1969 JLS, 2010 WL 3058260, at *8 (S.D. Cal. Aug. 3, 2010) ("The third alleged 'illegal and unfair' business practice—furnishing inaccurate information to credit reporting companies—is not a sufficient basis for Plaintiff's UCL claim because it is preempted by federal law.").